United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN D. KAUFMAN,
Plaintiff,
v.
STONECREST MANAGERS, INC., et al.,
Defendants.

Case No. 26-cv-10947-HSG

**ORDER DENYING REQUEST FOR PRELIMINARY INJUNCTION AND VACATING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 14

Pending before the Court is an order to show cause why a preliminary injunction should not issue in light of the temporary restraining order ("TRO") that the Court granted in this case. Dkt. No. 14. With the benefit of further briefing and evidence, an in-person hearing held on October 8, 2026, and time to consider the parties' arguments, the Court **DENIES** the preliminary injunction request and **VACATES** the TRO.

## I. BACKGROUND

### a. Factual Background

Plaintiff is a 70-year-old man who in 2014 purchased property through an LLC located at 95 Nordhoff Street in San Francisco, California, 94131 (the "Property"). ("Mot."), Dkt. No. 8-1 at 1; ("Compl."), Dkt. No. 1 ¶¶ 15, 29–30. Plaintiff is a real-estate agent licensed in California. Sur-Reply ("SR."), Dkt. No. 21 at 8; October 8, 2026 Rough Draft Preliminary Injunction Hearing Transcript ("Tr."), 4:4–5:11.[1] The Property is owned by a limited liability corporation called "95

[1] The Court takes judicial notice of the State of California Department of Real Estate agent license number 01830567 issued to John D. Kaufman of 240 Cumberland Street, Suite 109, San Francisco, CA 94114, which is currently active and was issued on October 24, 2007. Fed. R. Evid. 201; *see* https://www2.dre.ca.gov/publicasp/pplinfo.asp (visited October 8, 2026). This

Nordhoff, LLC" (the "LLC"). Compl. ¶¶ 29–30.

On or around August 11, 2022, the LLC obtained a business purpose credit line from Defendant Secured Income for the Property. ("Opp."), Dkt. No. 13 at 2; ("Opp. Ex."), Dkt. No. 13-1 Exs. 1–2, 4–5. The LLC is not a plaintiff in this action. Compl. ¶ 3. Plaintiff is the "managing member" of the LLC who executed the credit line at issue in this case on behalf of the LLC. Opp. Exs. 1–2, 4–5. He was 66 at the time. Compl. ¶ 15; Declaration of John D. Kaufman ("Kaufman Decl."), Dkt. No. 8-2 ¶ 2; Reply ("R."), Dkt. No. 20 at 1. The credit line was secured by a "Long Form Deed of Trust and Assignment of Rents for Real Estate Secured Equity Credit Line Revolving Loan Agreement" recorded in San Francisco County between Defendant Secured Income Fund-II, LLC ("Secured Income") and the LLC. Opp. Ex. 2 at 1.

The parties dispute whether the Property is Plaintiff's residence or instead used by Plaintiff for business purposes, and whether the loan for the Property was consumer or commercial in nature. *Compare* Mot. at 1; Kaufman Decl. ¶¶ 3–4, 15; R. at 1 *with* Opp. at 3–4, 10; Opp. Exs. 1–2, 4–5; SR. at 4.

The credit line matured on March 1, 2024 and went into default. Opp. at 4. As a result, Plaintiff as the LLC's agent executed a "Forbearance Agreement" on May 24, 2024. Opp. Ex. 7. On March 12, 2026, the foreclosure trustee caused a "Notice of Default" to be publicly recorded. Compl. ¶ 58. Upon the LLC's failure to cure, on July 15, 2026, the foreclosure trustee caused a Notice of Trustee's Sale to be recorded, which scheduled a nonjudicial foreclosure sale of the Property for August 6, 2026. Opp. at 5; Opp. Ex. 9. The sale was postponed fifty-six days because Plaintiff invoked a minimum 45-day statutory postponement after mailing purported listing agreements to the foreclosure trustee. Opp. at 5–6.

**b. Procedural History**

Plaintiff filed this case on September 25, 2026. *See* Compl. Four days later, on September 29, 2026, Plaintiff filed a motion for a temporary restraining order and order to show cause why a

---

address is the same as the one for the LLC that owns the Property. Dkt. No. 21-1 Ex. 36 at 1.

preliminary injunction should not issue. Mot. at 1–2. Plaintiff seeks to restrain Defendants[2] and all those acting in concert with them from holding a nonjudicial foreclosure sale of the Property. *Id.* The TRO motion was filed only a day and a half before the scheduled sale on October 1, 2026. *See* Mot.

On the same day the TRO was filed, the Court issued an order directing Plaintiff to serve counsel for Defendants at a minimum via email with the Complaint, Plaintiff's TRO motion and supportive documents, and the Court's Order declining to rule on the TRO without clear notice to Defendants and an opportunity for them to be heard under Federal Rule of Civil Procedure 65(b)(1). Dkt. No. 9 at 1–2. Defendant Secured Income filed an opposition brief the next morning, September 30, 2026. *See* Opp. No other Defendant filed an opposition brief, and the matter was deemed submitted pursuant to Local Rule 7-1(b). Dkt. No. 9 at 3.

In that emergency posture—a day before the scheduled October 1, 2026 sale—the Court granted a TRO, finding good cause and that the four *Winter* factors were met. Dkt. No. 14 (*citing Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24, 32 (2008)). However, the Court noted that there were potentially significant issues with respect to a number of matters in this case that would need to be addressed before the Court would consider granting a preliminary injunction. *Id.* at 2.

Since entering the TRO, Plaintiff filed his reply, and Defendant Secured Income filed its sur-reply. *See* R.; SR. The Court then held an in-person hearing on October 8, 2026, regarding the order to show cause why a preliminary injunction should not issue.

## II. LEGAL STANDARD

Injunctive relief is a matter of equitable discretion and "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22, 24, 32 (citation omitted); Fed. R. Civ. P. 65. Preliminary injunctions may only issue

[2] Defendants listed on Plaintiff's complaint are: STONECREST MANAGERS, INC., a California corporation; KIWI & CO., d/b/a STONECREST FINANCIAL, a California corporation; SECURED INCOME FUND-II, LLC, a California limited liability company; ROCK SOLID FINANCIAL d/b/a/ MORGAN STRAUSS CAPITAL, a California corporation; LOUIS M. COSTANZO, an individual; PLM LENDER SERVICES, INC., a California corporation; PLM LOAN MANAGEMENT SERVICES, INC., a California corporation, inclusive. Dkt. No. 1 at 1.

where the moving party has clearly shown: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest. *See Winter*, 555 U.S. at 20, 22 (citations omitted). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quotation omitted).

The movant's burden of "substantial proof is much higher" on a motion for preliminary injunctive relief than "even a [movant's] motion for summary judgment." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A movant is only entitled to this "drastic remedy" where the movant "*by a clear showing*, carries the burden of persuasion," *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (*quoting* same) (emphasis in original), which is generally why "allegations that may be sufficient for pleading purposes simply are not enough to prove [a movant's] entitlement to a preliminary injunction," *Hicks v. Neal*, No. 12-cv-02207-SI, 2012 WL 3791399, at *3 (N.D. Cal. Aug. 31, 2012). "If a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (emphasis in original) (cleaned up).

## III. DISCUSSION

Plaintiff has not met his substantial burden of clearly showing that he is likely to succeed on the merits of his claims, nor has he raised serious questions regarding that issue.

### a. There is no likely "consumer" for the purposes of various causes of action.

A number of Plaintiff's theories do not appear to have any likelihood of success on the merits. The Truth-in-Lending Act ("TILA"), Home Ownership Equity Protection Act ("HOEPA"), Fair Debt Collection Practices Act ("FDCPA"), and Rosenthal Fair Debt Collection Practices Act ("RFDCPA") only apply to consumer credit transactions. 15 U.S.C. §§ 1635(a), (i)(4), 1692a(3), (5); Cal Civ. C. § 1788.2(e). As the Ninth Circuit has explained, these statutes and implementing regulations as relevant carefully define what constitutes a consumer credit

transaction. *See Gilliam, Tr. of Lou Easter Ross Rev. Tr. v. Levine, Tr. of the Joel Sherman Rev. Tr.*, 955 F.3d 1117, 1120–21 (9th Cir. 2020). A transaction qualifies only where it has at least one "natural person"— rather than, say, a "corporation" or "association" as a party to the contract—and the loan is for "personal, family, or household purposes." 15 U.S.C. §§ 1602(d)-(e), (i), (bb)(1)(A), 1603(1), 1635(a), (i)(4), 1692a(3), (5); Cal Civ. Code § 1788.2(e), (g).[3]

Plaintiff skips over the first step in the analysis by jumping straight to the secondary question of whether the transaction at issue was consumer or commercial in nature. The first question is whether there was a consumer who was a party to the contract. The LLC entered into the transactions here—not Plaintiff—and thus is not a "natural person" for the purposes of these statutes. *Id.*; Opp. Exs. 1–2, 4–5, 7; *see Iturbe v. Sunny Acre LLC*, No. 24-cv-06644-PA, 2025 WL 2631602, at *6–7 (C.D. Cal. Apr. 25, 2025) (finding that an LLC was not likely a natural person under the *Winter* standard). Plaintiff acknowledged as much by indicating that "Borrower is [X] a corporation . . .," rather than selecting "Borrower is [ ] an individual (natural person)" on the "Loan Purpose And Real Property Security Declaration." Opp. Ex. 4 at 1.

*Gilliam* does not counsel otherwise. The Ninth Circuit recognized that the Consumer Financial Protection Bureau ("CFPB") created a carve out for a specific form of entity—trusts—and only those "created for tax or estate planning purposes," on the theory that "in substance (if not form) consumer credit is being extended." *Gilliam*, 955 F.3d at 1119–22 (*citing* 12 C.F.R. § 1026.3 Comment 3(a)-10.i). The LLC is not a trust. Under California law the LLC creates a liability shield for its members including Plaintiff, *PacLink Commc'ns Intern., Inc. v. Super. Ct.*, 90 Cal. App. 4th 958, 963 (2001) (citation omitted), whereas a trust is an estate planning mechanism without a separation of "property owned by the revocable trust and property owned by the settlor of such a revocable trust" during their lifetime, *Carolina Cas. Ins. Co. v. L.M. Ross Law Grp., LLP*, 184 Cal. App. 4th 196, 208 (2010) (quotation omitted). The CFPB could have easily

[3] To the extent Plaintiff claims he is a "debtor" under the RFDCPA and thus protected, that argument is not likely to succeed. RFDCPA protections are extended to debtors who are natural people and guarantee an obligation, when the obligation arises from a transaction that qualifies as a "covered commercial transaction." Cal. Civ. Code § 1788.2(h)(2). And that is not likely the case as detailed in this Order.

drawn the trust exception more broadly to apply to "entities" such as the LLC rather than only "trusts," and did not do so. Thus, LLCs are not likely natural people for the purposes of these statutes.

Only in narrow circumstances have courts sometimes found corporate entities to be consumers where there was no genuine dispute that the transaction was functionally extending credit through the corporate form to a natural person, and where the lender "required [the plaintiff] to form" the corporation "as a condition of issuing the loan." *Barker v. Rokosz*, 740 F. Supp. 3d 187, 192, 198–204 (E.D.N.Y. 2024). That is not the case here: the LLC was formed long before the transactions at issue by Plaintiff to hold the Property. Kaufman Decl. ¶ 5; Compl. ¶¶ 29–30. Nor are Defendants foreclosing against Plaintiff personally, after forcing Plaintiff to incorporate; they are proceeding against the LLC. Opp. Ex. 9 at 1. In this case, as in *Iturbe*, "it is clear" from the complaint, briefs, and exhibits "that the []LLC is the named borrower for the [loan], and that [Plaintiff] knew this when he signed the documents." 2025 WL 2631602, at *7; *see* Kaufman Decl. ¶ 5; Compl. ¶¶ 29–30; Opp. Exs. 1–2, 4–5, 7. And in any event, by Plaintiff's own admission, the LLC was not formed for tax and estate planning purposes. Plaintiff avers under oath that he did not form it "for any specific purpose." Kaufman Decl. ¶ 5.

The Court will not expand these carefully drawn statutory and regulatory definitions of consumer transactions to cover the LLC.

**b. <u>The transactions at issue were likely for a commercial, not consumer purpose.</u>**

The Real Estate Settlement Procedures Act ("RESPA") does not have a natural person requirement and applies when there is a consumer—but not commercial—purpose to the relevant transaction. 12 U.S.C. § 2606(a)(1); *see Gilliam*, 955 F.3d at 1120 (discussing RESPA requirements). But it is Plaintiff's burden to make a clear showing on this point, and he has not. To the contrary: the evidence establishes a clear likelihood that the transaction was commercial in nature. Thus, even assuming a consumer existed for the purpose of allowing these claims past the first stage of the analysis, they fail at this second stage.

Given the overlapping definitions in TILA and RESPA, courts generally look to the Ninth Circuit's *Thorns v. Sundance Properties* decision to analyze whether a transaction is consumer in

nature under RESPA. *See Acevedo v. Loan Co. of San Diego*, No. 20-cv-01263-BAS (CB), 2020 WL 4596760, at *3–5 (S.D. Cal. Aug. 10, 2020) (*citing* 726 F.2d 1417, 1419 (9th Cir. 1984)). Courts consider: "(1) the relationship of the borrower's primary occupation to the acquisition; (2) the degree to which the borrower will personally manage the acquisition; (3) the ratio of income from the acquisition to the total income of the borrower; (4) the size of the transaction; and (5) the borrower's statement of purpose for the loan." *Id.*

While Plaintiff claims that he was duped into executing a business loan, he has not cited evidence for that claim except for his own declaration's description of the events prepared in anticipation of this litigation. Plaintiff's counsel at the hearing provided no additional evidence. Conversely, Defendant Secured Income introduced significant evidence spanning seven and a half years seriously calling into question Plaintiff's version of events in his affidavit submitted under oath to this Court. The record before the Court likely demonstrates that in Plaintiff's own words: "[t]he Property is owned by Borrower *exclusively for commercial purpose*, either for repair and resale purposes or for use as a rental single family home or a multi-family apartment complex and other appurtenant and related uses." ("SR. Ex."), Dkt. No. 21-1 Ex. 39 § 30(r) (emphasis added).

For example, on or around August 11, 2022, Plaintiff executed the credit line contract at issue as member of the LLC. Opp. at 2; Opp. Exs. 1–2, 4–5. The credit line contract has seven checkboxes on the first page for the categories: (1) "interest only;" (2) "partially amortized;" (3) "fully amortized;" (4) "owner user;" (5) "consumer purpose;" (6) "business purpose;" and (7) "business entity." Opp. Ex. 1 at 1. The boxes for "interest only," "business purpose," and "business entity" are selected; and the box for "consumer purpose" is not. *Id.* In the related Loan Purpose and Real Property Security Declaration, Plaintiff as the LLC's agent reaffirmed the business nature of the transaction by indicating that the credit line's purposes were all "Business" in nature, handwriting "Bs" in the column entitled "Use" rather than "Ps" for "Personal" or "As" for "Agricultural." Opp. Ex. 4 at 2. This document instructed Plaintiff that false statements made on the document could subject the signer to civil and criminal penalties. *Id.* at 4. Plaintiff also indicated, "I do not intend to occupy any housing unit on the Property as my personal residence if and when the Loan closes," and stated that the Property was "currently vacant land held

exclusively for investment (i.e., for appreciation and resale) and not for any personal use." *Id.* at 3–4. This is all facial evidence that the transaction at issue was commercial in nature.

And these financial documents do not stand alone. Defendant Secured Income submits affidavits reflecting contemporaneous oral and written representations by Plaintiff and his counsel that the purpose of this loan was to construct homes at the Property for sale—*i.e.*, a commercial transaction. Declaration of Shafiq Taymuree ("Taymuree Decl."), Dkt. No. 21-3 ¶¶ 23–24; Declaration of Steve Freeman ("Freeman Decl."), Dkt. No. 21-4 ¶¶ 5–6; SR. Ex. 28 at 1. Plaintiff also apparently pursued loans with other companies for construction at the Property. Freeman Decl. ¶ 6. And there are numerous emails concerning possible sales related to the Property. Taymuree Decl. ¶ 28; SR. Ex. 31. Plaintiff was also represented by counsel during at least part of the original credit line transaction here. Taymuree Decl. ¶¶ 21–24; Freeman Decl. ¶¶ 8–11. And Plaintiff is a registered real estate agent. SR. at 8; Order *supra* n.1.

It is unlikely on this evidence that Plaintiff could make out a showing that he was not aware or was otherwise misled into entering what was numerous times clearly represented to be a business-purpose loan. To the contrary, under *Thorns* factors one and five, it appears that Plaintiff's business as a real estate agent is the sale of property like the Property in question, and that the loan's purpose to that end was made expressly clear. Akin to *Acevedo* on factor two, here it appears that Plaintiff was a managing member of the LLC involved in the build out and sale of the Property. 2020 WL 4596760, at *4. Finally, Defendant Secured Income introduced some of Plaintiff's financial records indicating that Plaintiff holds millions of dollars in assets, such that *Thorns* factors three and four appear to support the inference that the transaction was paired to the commercial activity in question, though the Court lacks sufficient visibility at this time regarding the relationship of these records between Plaintiff personally and the LLC to fully resolve these factors. Taymuree Decl. ¶¶ 14–16 (*citing* SR. Exs. 22–24). In any event, the contemporary evidence strongly supports the likelihood that the transaction at issue was business in nature under *Thorns*.

Importantly, Plaintiff took the position that the Property and loans taken out in connection with it were commercial in nature over a substantial period of time *predating his association with*

*Defendants*. Seven and a half years earlier on October 23, 2014, Plaintiff filed another Deed of Trust for the Property signed by Plaintiff on behalf of the LLC securing a loan with 5 Arch Funding Corporation. Declaration of Kathy Shakibi ("Shakibi Decl."), Dkt. No. 21-2 ¶ 20; SR. Ex. 39 at 1, 25–26. The Deed of Trust secured a loan "for a business purpose." SR. Ex. 39 § 6. It also provided that "under no circumstance shall Borrower occupy, establish, or use the Property, or any part thereof, as Borrower's residence or the residence of any Principal." *Id.* To that end, the deed said that "[t]he Property is owned by Borrower *exclusively for commercial purpose*, either for repair and resale purposes or for use as a rental single family home or a multi-family apartment complex and other appurtenant and related uses." *Id.* § 30(r) (emphasis added).

Those representations and agreements by Plaintiff in 2014 are consistent with what Plaintiff agreed to regarding the instant transaction, and together they strongly refute Plaintiff's attempted recharacterization today given that they could not have been influenced by Defendants' alleged misconduct. At the hearing, Plaintiff's counsel suggested for the first time that Plaintiff was somehow fraudulently misled in 2014 as well. Tr. at 6:15–9:14. Counsel cited no evidence in support of this new claim, and to put it mildly the Court finds this argument lacking in credibility.

Finally, and persuasively, Plaintiff filed two "Statements of Information" regarding the LLC with the State of California's Office of the Secretary of the State on March 17, 2024 and February 16, 2026. SR. Ex. 36 at 1–4. These filings are unrelated to the transactions at issue in this case and were not directed by Defendants: they are Plaintiff's own submissions to renew the LLC. Plaintiff listed a separate residential property as the LLC's mailing and principal address: 240 Cumberland Street, Suite 109, San Francisco, CA 94114. SR. Ex. 36 at 1. And Plaintiff reported that the LLC is in the business of developing "4 single family houses." *Id.* Plaintiff's statements here too were made under penalty of perjury. *Id.* at 2. Plaintiff's counsel at the hearing suggested, without factual evidence or legal authority, that Plaintiff did not draft these documents and therefore is not responsible for their content. Tr. at 9:15–10:19. The Court again finds that this bald assertion lacks credibility, especially given Plaintiff's status as a registered real estate agent.

The Court need not decide today which of Plaintiff's contradictory representations

regarding the Property were accurate. What matters is that in the face of significant and consistent contemporaneous evidence of Plaintiff's own admissions across seven and a half years, Plaintiff does not remotely carry his burden of establishing a clear likelihood of success on the merits that the relevant transactions were consumer in nature, or raising serious questions as to that issue.

**c. The remaining substantive causes of action are equally unlikely to succeed on the merits.**

Plaintiff's Elder Abuse and Dependent Adult Civil Protection Act ("EADACPA") claim in general requires proof that Defendants took or misappropriated Plaintiff's property for wrongful use or with intent to defraud. Cal. Wel. & Inst. Code § 15610.30(a). Claims under California's Unfair Competition Law ("UCL") for unfair and fraudulent conduct likewise require proof of false or misleading statements about the transactions at issue or conduct likely to deceive a reasonable customer.[4] *Canas v. Citimortgage, Inc.*, No. 13-cv-00322-DOC, 2013 WL 3353877, at *5 (C.D. Cal. July 2, 2013); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006), *recognizing amendment on other grounds Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159 n.1 (N.D. Cal. 2011). Unconscionable contracts are characterized by procedural or substantive defects, arising from surprise or oppression as to the former and overly harsh or one-sided terms as to the latter. *Grand Prospect Partners v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1347 (2015). A breach of fiduciary duty, or aiding and abetting the same, similarly require an agent failing to "act in the interest of the principal." *Mendoza v. Cont. Sales Co.*, 140 Cal. App. 4th 1395, 1405 (2006). Slander of title in California requires, among other things, a false publication. *Klem v. Access Ins. Co.*, 17 Cal. App. 5th 595, 612 (2017). And common law fraud requires, among other things, a knowingly false representation. *City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191, 211 (2011) (citation omitted).

For the same reasons detailed above, Plaintiff's remaining causes of action fare no better. The same problem exists: Plaintiff's allegations are simply not consistent with the robust and

---

[4] The UCL's unlawful prong is inapplicable given that the Court finds no likelihood of success in establishing "independently actionable" conduct. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

United States District Court
Northern District of California

detailed documentary record. To the contrary, the evidence shows that Plaintiff is a real estate agent who has long viewed the Property as a commercial endeavor, entered into prior loans confirming as much, and was at least partially represented by counsel in this transaction. Opp. Exs. 1–2, 4–5, 7; SR. Exs. 36 at 1–4, 39 §§ 6, 30(r); Shakibi Decl. ¶ 20; Taymuree Decl. ¶¶ 21–24; Freeman Decl. ¶¶ 8–11; SR. at 8.[5] The evidence, in other words, likely reflects that Defendants executed on Plaintiff's request to secure a commercial loan and now validly seek foreclosure based on Plaintiff's default.

Given the significant problems with the merits of Plaintiff's claims, the Court holds that Plaintiff has established neither a clear likelihood of success on the merits nor serious questions as to them.[6] In light of this failure, the Court need not and does not consider the irreparable harm factor. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citations omitted).

## IV. CONCLUSION

The Court **DENIES** Plaintiff's request for a preliminary injunction and **VACATES** the TRO. Dkt. No. 14.

**IT IS SO ORDERED.**

Dated: October 9, 2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] *See supra* n.1.

[6] The Court thus does not need to reach Defendants' argument that Plaintiff's claims are barred by a 2024 release of claims, Opp. at 6–7.